Paula L. Zecchini, AZ Bar No. 031880
Aaron M. McKown, (admitted *pro hac vice*)
COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, WA  98104
Telephone: 206.340.1000
Facsimile: 206.621.8783
E-Mail:      pzecchini@cozen.com
                amckown@cozen.com

Attorneys for Defendant
GODADDY.COM, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JOHN HERRICK, individually and as the representative of a class of similarly situated persons,<br><br>        Plaintiff,<br><br>    v.<br><br>GODADDY.COM, LLC,<br><br>        Defendant. | Case No.: 2:16-cv-00254-DJH<br><br>**DEFENDANT GODADDY.COM, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO STAY**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[Concurrently Filed with Separate Statement of Undisputed Material Fact, Request for Judicial Notice and Declaration of Paula L. Zecchini]**<br><br>Complaint Filed:   January 28, 2016<br>Trial Date:       None Set. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant GoDaddy.com, LLC ("GoDaddy") will and hereby does move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to Plaintiff's sole claim for violation of the Telephone Consumer Protection Act ("TCPA"), 48 U.S.C. § 227, on the following grounds:

(1)    The text message at issue was not sent using an "automatic telephone dialing system" ("ATDS"), as that term is defined by the TCPA; and

(2)    The text message at issue was not sent using an ATDS, as that term has been interpreted in guidance issued by the Federal Communications Commission ("FCC").

GoDaddy alternatively moves the Court for a stay of proceedings pending the Ninth Circuit's decision in *Marks v. Crunch San Diego*, No. 14-56834, to the extent the Court is inclined to deny GoDaddy's Motion for Summary Judgment in reliance on the FCC's "potential capacity" guidance.

This Motion is based upon this Notice, the Memorandum of Points and Authorities, the concurrently-filed Separate Statement of Undisputed Material Fact, Request for Judicial Notice and Declaration of Paula L. Zecchini, all pleadings and documents concerning this matter contained in the Court's file, any other matters of which this Court may take judicial notice, and such further evidence and oral argument as may be presented at the hearing of this Motion.

Dated:  March 31, 2017

**COZEN O'CONNOR**
Aaron M. McKown
Paula L. Zecchini


By:  */s Paula L. Zecchini*
      Paula L. Zecchini
Attorneys for Defendant
GODADDY.COM, LLC

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ......................................................... 3

III. LEGAL STANDARD .......................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 5

    A.   The TCPA Defines An Automatic Telephone Dialing System (ATDS) .................. 5

    B.   The Undisputed Evidence Demonstrates That The 3Seventy Platform Is Not An ATDS Under The Statutory Definition .................................................. 6

    C.   FCC Guidance is Immaterial to the Court's Determination as to whether the 3Seventy Platform is an ATDS under the TCPA ..................................... 10

    D.   Even if FCC Guidance Is Applicable To This Court's Determination, The Undisputed Evidence Demonstrates That The 3Seventy Platform Is Not An ATDS Under the FCC's Interpretation Of The Statutory Definition ................................. 12

    E.   If The Court Is Inclined To Deny GoDaddy's Motion For Summary Judgment In Reliance On The FCC's "Potential Capacity" Guidance, GoDaddy Moves This Court For The Issuance Of A Stay ............................... 14

V.   CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*47  v. Shopkick, Inc.*,
  Case No. C-14-2464-MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) ................... 13

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
  69 F.3d 337 (9th Cir. 1995)................................................................................................. 5

*Bay Area Surgical Group, Inc. v. Aetna Life Ins. Co.*,
  No. 5:13-CV-05430-EJD, 2014 WL 2759571 (N.D. Cal. June 17, 2014)........................ 16

*Beyene v. Coleman Sec. Servs., Inc.*,
  854 F.2d 1179 (9th Cir. 1988)............................................................................................. 5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................................ 4

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 827 (1984) .......................................................................................................... 11

*Clinton v. Jones*,
  520 U.S. 681 (1997) .......................................................................................................... 15

*De Los Santos v. Millward Brown Inc.*,
  No. 2014 WL 25 2938605 (S.D. Fla. June 30, 2014) ......................................................... 8

*Derby v. AOL, Inc.*,
  Case No. 5:15-cv-00452-RMW, 2015 WL 5316403 (N.D. Cal. Sept. 11, 2015)............. 13

*Dominguez* v. *Yahoo!*
  8 F. Supp. 3d 637 (E.D. PA 2014) ................................................................................... 10

*Emanuel v. Los Angeles Lakers, Inc.*,
  No. CV 12-9936-GW SHX, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013)...................... 7

*Glauser v. GroupMe, Inc.*,
  No. 4:11-cv-02584, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) ............................. 7, 12, 14

*Gragg v. Orange Cab Co.,*
  *Inc.*, 995 F. Supp. 2d 1189 (W.D. Wash. 2014).......................................................... 7, 14

*Hunt v. 21st Century Mortgage Corp.*,
  No. 2:12-CV-2697-WMA, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) ....................... 8

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
  662 F.3d 1292 (11th Cir. 2011)......................................................................................... 11

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .......................................................................................................... 15

ii

*Leyva v. Certified Gorcers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979)..................................................................... 15

*Lockyer v. Mirant Corp.*,
398 F.2d 1098 (9th Cir. 2005)................................................................... 16

*Luna v. Shac, LLC*,
No. 14-cv-00607-HRL, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) ..... 13

*Marks v. Crunch San Diego, LLC*,
55 F. Supp. 3d 1288 (S.D. Cal. Oct. 23, 2014) ...................................... 7, 8, 9, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................... 4

*McKenna v. Whispertext, LLC*,
No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ........... 13

*Modica v. Green Tree Servicing, LLC*,
No. 14 C 3308, 2015 WL 1943222 (N.D. Ill. Apr. 29, 2015) ..................... 14

*Myers v. Toojay's Mgmt. Corp.*,
640 F.3d 1278 (11th Cir. 2011)................................................................... 11

*Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,
18 F.3d 1468 (9th Cir. 1994) ......................................................................... 4

*Nussbaum v. Diversified Consultants, Inc.*,
No. 15-CV-600, 2015 WL 5707147 (D. N.J. Sept. 28, 2015) ..................... 16

*Provo v. Rady Children's Hosp. San Diego*,
2015 WL 6144029 (S.D. Cal. July 29, 2015)............................................... 16

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009)............................................... 2, 6, 7, 10, 11, 12

*Sherman v. Yahoo! Inc.*,
997 F. Supp. 2d 1129 (S.D. Cal. 2014) ......................................................... 7

**Rules**

Fed. R. Civ. P. 56(c).......................................................................................... 4

Fed. R. Civ. P. 56(e).......................................................................................... 4

**Regulations**

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
27 F.C.C.R. 15391, 15392 n. 5 (2012) ....................................................... 9

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection
Act of 1991, 18 FCC Red 14014, 14092 (July 3, 2003) .............................. 5

iii

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection
   Act of 1991, 23 FCC Rcd 559, 566 (Jan. 4, 2008) ................................................................. 5

In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection
   Act of 1991, 30 F.C.C. Rcd. 7961 (July 10, 2015) ............................................. 6, 10, 12, 15

DEFENDANT GODADDY.COM, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, MOTION TO STAY

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant GoDaddy.com, LLC ("GoDaddy") is a provider of web-based products and services, including domain name registration, website hosting and other online business applications.  As relevant to this case, GoDaddy employed a third-party marketing company, 3Seventy, Inc. ("3Seventy") to run its one and only text message marketing campaign. Plaintiff John Herrick ("Plaintiff") alleges, on behalf of himself and the putative class, that his receipt of a single text message from the 3Seventy marketing campaign violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on the grounds that the text message at issue was allegedly sent using an "automatic telephone dialing system" ("ATDS").  The undisputed evidence demonstrates otherwise.

The TCPA specifically defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Undisputed evidence adduced from 3Seventy demonstrates that the web-based software application used by 3Seventy to send the text message at issue (the "3Seventy Platform") allows users to send text messages only to those specific, identified phone numbers that are inputted into the Platform; it cannot be used to send text messages to random or sequentially-generated phone numbers.  Based on this undisputed evidence, the 3Seventy Platform does not meet the TCPA definition of an ATDS.  Indeed, a number of recent decisions in the Ninth Circuit involving platforms similar to the 3Seventy Platform have granted summary judgment in favor of the defendant where, as here, the software used to send the text messages does not have the capacity to generate random or sequential numbers, as required by the statutory definition.  The plain language of the TCPA provides GoDaddy with a complete defense to Plaintiff's TCPA claim.

GoDaddy anticipates that Plaintiff will endeavor to avoid summary judgment by drawing this Court into a circuitous argument based on guidance issued by the Federal Communications Commission ("FCC") that attempts to broaden the definition of an ATDS

1

beyond the plain terms of the statute. The FCC's interpretative rulings, however, are immaterial to this action given the Ninth Circuit decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), which held the statutory definition of an ATDS to be "clear and unambiguous," and as such, not subject to interpretation by the FCC. Plaintiff's attempt to broaden the definition of an ATDS beyond the plain terms of the statute has already been rejected by courts throughout the Ninth Circuit. The outcome in this case should be no different.

Yet even if the Court was to apply the FCC's guidance to the issue of whether the 3Seventy Platform qualifies as an ATDS under the TCPA, the undisputed evidence mandates dismissal. Although Plaintiff will likely focus this Court on the FCC's interpretation of the term "capacity" in the TCPA's definition of an ATDS to mean "potential capacity"—an incredibly overbroad and vague interpretation that is currently the subject of an appeal to the D.C. Circuit Court of Appeals and has generated significant controversy—neither the Court nor the parties need be drawn into an argument on this point. This is because regardless of the definition ascribed to the term "capacity" by the FCC, the FCC has repeatedly stated that the defining feature of an ATDS is not simply the capacity to dial numbers but rather the capacity to dial numbers without human intervention. A number of recent decisions in the Ninth Circuit support the conclusion that the level of human intervention required to send a text message from the 3Seventy Platform places it outside the scope of the FCC's ATDS interpretation.

As set forth more fully herein, GoDaddy is entitled to summary judgment on the issue of whether it used an ATDS to send the text message at issue, regardless of whether the Court applies the clear and unambiguous statutory definition of an ATDS to the 3Seventy Platform or whether it looks to FCC commentary to resolve the matter. To the extent the Court believes it is unable to reach a determination on summary judgment without evaluating the "potential capacity" of the 3Seventy Platform, GoDaddy requests the issuance of a stay of this action pending a final determination of the appeal in *Marks v. Crunch San Diego, LLC*, No. 14-56834, which was stayed *sua sponte* by the Ninth Circuit pending a decision

2

1    from the D.C. Circuit on whether the FCC's treatment of the term "capacity" in attempting to

2    interpret the TCPA's definition of an ATDS is "arbitrary, capricious, [or] an abuse of

3    discretion."

4    **II.**    **RELEVANT FACTUAL BACKGROUND**

5      3Seventy operates the 3Seventy Platform, a cloud-based application software that

6    enables 3Seventy's clients to connect with their respective customers via text message.

7    Zecchini Decl. ¶ 2, Ex. A (Wright Dep.) at 18:3-6. GoDaddy contracted with 3Seventy to

8    implement its one and only text message marketing campaign, which resulted in Plaintiff

9    receiving the text message at issue on December 15, 2015. *Id*. at 37:9-12, 14-17. The text

10    message at issue was sent using the 3Seventy Platform. [Separate Statement of Undisputed

11    Material Fact ("SSUF") 1]

12      The 3Seventy Platform does not employ an "automatic telephone dialing system"

13    ("ATDS"), as defined by the TCPA. The 3Seventy Platform is a web-based software

14    application. [SSUF 2] At no time relevant did the 3Seventy Platform have the then-current

15    capacity to store or produce telephone numbers to be called using a random or sequential

16    number generator and to then dial those numbers. [SSUF 3] The 3Seventy Platform cannot

17    on its own generate telephone numbers to receive text messages. [SSUF 4] Rather, there are

18    only two ways that the 3Seventy Platform can acquire phone numbers for use in sending text

19    messages: (1) when a customer or other authorized person manually uploads telephone

20    numbers onto the platform; or (2) when an individual sends an authorizing text to a keyword

21    in response to a specific marketing campaign. [SSUF 5] The 3Seventy Platform did not

22    generate the phone numbers to which GoDaddy's December 15, 2015 text messages were

23    sent. [SSUF 6] Rather, those numbers were provided by GoDaddy to 3Seventy via its FTP

24    site and then uploaded by 3Seventy to the 3Seventy Platform. [SSUF 7]

25      To send a text message via the 3Seventy Platform, the user must navigate to a website

26    and manually log into 3Seventy's Platform. [SSUF 8] Importantly, the user must upload a

27    list of numbers and determine the numbers to which a message will be sent. [SSUF 9] To

28    create a message, the user must manually type in the desired content. [SSUF 10] In order to

3

1  send a message, the user must manually select a time and date that the message will be sent.

2  [SSUF 11]  Finally, before the 3Seventy Platform can send a message, the user must type in

3  a Captcha—twelve alphanumeric values—to approve and authorize sending the message.

4  [SSUF 12]  The 3Seventy Platform will not send a text message without human intervention

5  at each of the following stages: (a) selecting telephone numbers to receive a message, (b)

6  drafting message content, (c) determining the timing of a message, and (d) scheduling the

7  date and time to transmit a message and (d) entering a Captcha to approve and authorize

8  sending the message.  [SSUF 13]

9  **III.   <u>LEGAL STANDARD</u>**

10      Summary judgment is a procedure that is "properly regarded not as a disfavored

11  procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

12  designed to secure the just, speedy and inexpensive determination of every action."  *Celotex*

13  *Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted). Summary

14  judgment serves the purpose of "avoid[ing] unnecessary trials when there is no dispute as to

15  the facts before the court."  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

16  1468, 1471 (9th Cir. 1994).

17      To prevail on a motion for summary judgment, the moving party need only show

18  through the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits

19  that there are no genuine issues of material fact, rendering the moving party "entitled to

20  judgment as a matter of law."  Fed. R. Civ. P. 56(c). Once the moving party demonstrates

21  that no genuine issues of material fact exist, the burden shifts to the nonmoving party to "do

22  more than simply show that there is some metaphysical doubt as to the material facts" to

23  avoid summary judgment being entered in the moving party's favor.  *Matsushita Elec. Indus.*

24  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)  Instead, the "nonmoving party must

25  come forward with 'specific facts showing there is a *genuine issue for trial*.'"  *Id*. at 587

26  (citing Fed. R. Civ. P. 56(e)) (emphasis added by Court).  To deny summary judgment, the

27  nonmoving party must prove, through admissible evidence, that the material facts are

28  "genuine," meaning "that a reasonable jury could find in favor of the nonmoving party."

1    *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 343 (9th Cir. 1995);

2    *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

3    IV.   **ARGUMENT**

4        A.    **THE TCPA DEFINES AN AUTOMATIC TELEPHONE DIALING**

5              **SYSTEM ("ATDS")**

6        The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), prohibits

7    the use of Automatic Telephone Dialing Systems to make certain telephone calls to cell

8    phones. As it applies here, the TCPA makes it unlawful,

9            (A) to make any call (other than a call made for emergency purposes or
             made with the prior express consent of the called party) using any
10           automatic telephone dialing system or an artificial or prerecorded voice—

11           (iii) to any telephone number assigned to a paging service, cellular
             telephone service, specialized mobile radio service, or other radio service,
12           or other radio common carrier service, or any service for which the called
             party is charged for the call.
13

14   47 U.S.C. § 227(b)(1)(A).

15       The TCPA includes a statutory definition of the term automatic telephone dialing

16   system ("ATDS") as follows:

17           (a) Definitions: As used in this section—

18           (1) The term "automatic telephone dialing system" means equipment
             which has the capacity—

19           (A) to store or produce telephone numbers to be called, using a random or
20           sequential number generator; and

21           (B) to dial such numbers.

22   47 U.S.C. § 227(a)(1).   The Federal Communications Commission ("FCC") adopted this

23   definition in its regulations.  *See* 47 C.F.R. 64.1200(f)(2).

24       The FCC has also asserted that the definition of an ATDS includes telephone

25   equipment with the capacity to dial phone numbers without "human intervention." *See In*

26   *the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act*

27   *of 1991*, 18 FCC Red 14014, 14092 (July 3, 2003) ("2003 Guidance"); *In the Matter of Rules*

28   *and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd

5

559, 566 (Jan. 4, 2008) ("2008 Guidance"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) ("2015 Guidance").

As discussed below, under the standard rules of statutory interpretation, the Ninth Circuit has held the definition of an ATDS to be clear and unambiguous, and therefore there is no need to refer to the more expansive FCC definition. *Satterfield v. Simon & Schuster*, 569 F.3d 946, 951 (9th Cir. 2012). However, regardless of whether the Court applies the unambiguous language of the statute or FCC commentary, the 3Seventy Platform does not constitute an ATDS. Summary judgment should be granted.

**B.   THE UNDISPUTED EVIDENCE DEMONSTRATES THAT THE 3SEVENTY PLATFORM IS NOT AN ATDS UNDER THE STATUTORY DEFINITION**

To succeed on his TCPA claim, Plaintiff must show, as an element of the claim, that GoDaddy utilized an ATDS to send the text message at issue. *See* 47 U.S.C. § 227(b)(1)(A). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). It is undisputed that at all times relevant, the 3Seventy Platform did not have the current (or then-current) capacity to generate numbers using a random or sequential number generator capacity to generate and dial numbers via a "random or sequential number generator." *See* SSUF 2-7. The FCC, however, has attempted to interpret the term "capacity" expansively to include the "future capacity" to generate and dial random or sequential numbers through changes in hardware or software—i.e., all "potential functionalities." *See* 2015 Guidance at ¶ 11 and ¶ 16. The "rotary-dial phone" is the only type of equipment the FCC concedes cannot be converted into an ATDS.[1]

---

[1]   Not surprisingly, the FCC's incredibly overbroad and vague definition of what constitutes an ATDS generated a swift appeal to the D.C. Circuit Court of Appeals. In the pending matter of *ACA International v. Federal Communications Commission*, Case No. 15-1211, the petitioner challenges the FCC's guidance as arbitrary and capricious, an abuse of

6

1    As a result of the FCC's decision to expansively broaden the term "capacity" in

2    issuing its implementing regulations, the question of what the word "capacity" means in the

3    TCPA's statutory definition of an ATDS has played out to different results in courts across

4    the country.   Courts in the Ninth Circuit have almost uniformly rejected the FCC's efforts to

5    expand the definition of an ATDS device given the "clear and unambiguous" definition of an

6    ATDS in the statutory language of the TCPA.   *See Satterfield*, 569 F.3d at 951 (9th Cir.

7    2009).   Indeed, in recent years, the majority of the district courts in the Ninth Circuit have

8    begun to apply a common sense standard recognizing that a piece of equipment's capacity

9    alone, without some showing that the functionality in question had been utilized, would not

10   be sufficient to establish liability under the TCPA.   *See, e.g., Emanuel v. Los Angeles Lakers,*

11   *Inc.,* No. CV 12-9936-GW SHX, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013); *Gragg v.*

12   *Orange Cab Co., Inc.*, 995 F. Supp. 2d 1189 (W.D. Wash. 2014); *Marks v. Crunch San*

13   *Diego, LLC*, 55 F. Supp. 3d 1288 (S.D. Cal. Oct. 23, 2014); *Glauser v. GroupMe, Inc*., No.

14   4:11-cv-02584, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015).   These courts have defined the

15   term "capacity" to mean "present, not potential capacity," pointing to the plain language of

16   the statute and the potentially unlimited reach of the TCPA if the FCC's broad interpretation

17   of "capacity" was accepted.   *See id.*

18   A notable outlier to the "present capacity" line of cases in the Ninth Circuit is the

19   decision in *Sherman v. Yahoo! Inc.,* 997 F. Supp. 2d 1129 (S.D. Cal. 2014), a case in which

20   the court refused to grant summary judgment for Yahoo! despite clear evidence that the

21   platform at issue did not have the present capacity to generate, store and dial random phone

22   numbers as required by the TCPA.   *Id.* at 1136.   Key to that decision, however, was the

23   *Sherman* court's finding that Yahoo!'s SMS platform had the potential to become an

24   autodialer given testimony from Yahoo! demonstrating that it was capable of writing new

25   software to add a sequential or random number generator to the system.   *Id.*   In reaching its

26   conclusion, the *Sherman* court relied on the broad interpretation of the term "capacity"

27

28   discretion, and inconsistent with various constitutional provisions.   *See* Def.'s Req. for
     Judicial Notice Ex. B, Amended Petition of ACA at 3 (ECF No. 21-3).

advanced by the FCC, despite clear Ninth Circuit authority holding the plain language of the TCPA to be "clear and unambiguous." *Satterfield*, 569 F.3d at 951.

The approach taken in *Sherman* has been soundly rejected not only in the Ninth Circuit line of "present capacity" decisions noted above, but also by a number of other well-reasoned courts across the country. *See, e.g., De Los Santos v. Millward Brown Inc*., No. 2014 WL 25 2938605, at \*6. (S.D. Fla. June 30, 2014) (rejecting a broad definition of "capacity" as it would have no "outer limit," as "virtually every telephone in existence, given a team of sophisticated engineers working doggedly to modify it, could possibly store or produce numbers using a random or sequential number generator"); *accord Hunt v. 21st Century Mortgage Corp*., No. 2:12-CV-2697-WMA, 2013 WL 5230061, at \*4 (N.D. Ala. Sept. 17, 2013) ("The problem with this reasoning is that, in today's world, the possibilities of modification and alteration are virtually limitless.  For example, it is virtually certain that software could be written, without much trouble, that would allow iPhones 'to store or produce telephone numbers to be called, using a random or sequential number generator, and to call them.'  Are the roughly 20 million American iPhone users subject to the mandates of § 227(b)(1)(A) of the TCPA?").  It has also been rejected by the United States in briefs defending the TCPA's constitutionality.[2]  *See* Defendant's Request for Judicial Notice, Ex. A, United States Mem. In Supp. of The Constitutionality of The TCPA, filed in *De Los Santos*, 2014 WL 25 2938605 (S.D. Fla. Jan. 31, 2014) (ECF No. 54) at 10-11 & n.7

The decision in *Marks v. Crunch San Diego*, 55 F. Supp. 3d 1288 (S.D. Cal. 2014), is particularly instructive.   In *Marks*, the defendant used a third-party SMS platform

---

[2]      As further support for narrowly interpreting the term "capacity", it bears noting that the United States filed a brief in *De Los Santos* defending the TCPA's constitutionality.  In doing so, it took the position that interpreting the "automatic telephone dialing system" definition as requiring random or sequential number generation capacity safeguards the statute from unconstitutional overbreadth.  *See* United States Mem. In Supp. of The Constitutionality of The TCPA, *De Los Santos* (S.D. Fla. Jan. 31, 2014) (ECF No. 54) at 10-11 & n.7.  Specifically, the United States cited with approval *Hunt v. 21st Mortgage Co*., which held that to satisfy the statutory definition, the equipment at issue must "have a present capacity, at the time the calls were being made, to store or produce and call numbers from a number generator."  *Id*. at 11 n.7 (quoting *Hunt v. 21st Mortg. Corp*., 2013 WL 5230061 at \*4.

administered by Textmunication to send promotional text messages to its members' and prospective customers' cell phones. *Id.* at 1290. Textmunication submitted a declaration indicating that the SMS platform at issue did not have the capacity to randomly or sequentially generate numbers, but rather simply stored numbers gathered through human intervention. *Id.* As described by Textmunication, phone numbers were inputted into the SMS platform by one of three methods: "(1) when Crunch or another authorized person manually upload[ed] a phone number onto the platform; (2) when an individual respond[ed] to a Crunch marketing campaign via text message (a "call to action"); and (3) when an individual manually input[ted] the phone number on a consent form through Crunch's website." *Id.* at 1291–92.

In a manner similar to the process outlined by 3Seventy in describing the operation of the 3Seventy Platform, in order to send the text messages at issue in *Marks*, an employee of the third party SMS platform provider was required to process and select the desired phone numbers, generate the messages, and then manually select the date(s) for messages to be sent. *Id.* at 1291–92. The SMS platform then sent the text messages to the selected phone numbers on the specified date and stored the numbers on the system to be used in later offers. *See id.*

In light of the process set forth above, the defendant in *Marks* moved for summary judgment on the narrow but dispositive issue that the alleged text messages were not sent using an ATDS and as such, the TCPA did not apply. In relying on the Ninth Circuit's prior ruling that the definition of an ATDS set forth in the TCPA is "clear and unambiguous," the *Marks* court rejected the broad interpretation of the term "capacity" advanced by the FCC. *Id.* at 1291-1292. In doing so, the court determined that because the third party platform at issue did not have the *present* capacity to produce phone numbers using a random or sequential number generator, it was not an ATDS under the TCPA.[3] *See id.*; *Satterfield*, 569

---

[3]    In doing so, the court also found that the FCC lacked the authority by which it had previously purported to broaden the statutory definition of an ATDS. In 2003, the FCC broadly interpreted the definition of an ATDS to include "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling

9

F.3d at 951; *accord Dominguez* v. *Yahoo!*, 8 F. Supp. 3d 637 (E.D. PA 2014) (granting summary judgment where the plaintiff failed to offer evidence that the system at issue had the capacity to randomly or sequentially generate telephone numbers, "as opposed to simply storing telephone numbers"). As such, the defendant was entitled to summary judgment on the plaintiff's TCPA claim.

Since the *Marks* decision, a number of district courts in the Ninth Circuit, and across the country, have dismissed similar cases at the summary judgment stage by relying on the express language of the TCPA to determine whether a certain SMS platform qualifies as an ATDS. The result should be no different here. It is undisputed that at all times relevant, the 3Seventy Platform did not have the current (or then-current) capacity to generate numbers using a random or sequential number generator  and dial numbers via a "random or sequential number generator." *See* SSUF 2-7. As such, the Court should grant GoDaddy's motion for summary judgment.

## C. FCC GUIDANCE IS IMMATERIAL TO THE COURT'S DETERMINATION AS TO WHETHER THE 3SEVENTY PLATFORM IS AN ATDS UNDER THE TCPA

As set forth above, the TCPA defines an ATDS as equipment "which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Although "the FCC initially interpreted the statute as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed"—an interpretation consistent with the plain language of the statute—that interpretation has changed over time. The FCC guidance, including the most recent 2015 Guidance, collectively holds that in order to qualify as an ATDS under the TCPA, equipment

---

lists." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 15391, 15392 n. 5 (2012) (emphasis added). The court found that the FCC's 2003 commentary "change[d]" and "modif[ied]" the TCPA's definition of an ATDS, which the FCC did not have authority to do because 47 U.S.C. section 227(a)—unlike section 227(b) and section 227(c)—"does not include a provision giving the FCC rulemaking authority." *Marks*, 55 F. Supp. At 1291.

must be able to store or produce numbers that themselves are randomly or sequentially generated 'even if it not presently used for that purpose.'" *See* 2015 Guidance at ¶ 11 and ¶ 16.

GoDaddy does not dispute that the FCC has the authority to prescribe regulations under the TCPA. *See* 48 U.S.C. § 227(b)(2). Nor does GoDaddy dispute that courts defer to such regulations "when an agency properly exercises its authority . . . to interpret an ambiguous statute, and then promulgate rules and regulations carrying the force of law." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1320 (11th Cir. 2011) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 827, 843--44 (1984)). But courts "do not apply Chevron deference . . . when a statutory command of Congress is unambiguous . . . . Where [as here] the statutory language is clear, agency regulations have no effect." *Id.*

As a result, FCC guidance that seeks to interpret or clarify the statutory definition of an ATDS is not binding on this Court. In contrast, the Ninth Circuit's decision in *Satterfield* is binding on this Court. In *Satterfield*, the Ninth Circuit determined the statutory definition of an ATDS to be "clear and unambiguous," and as such, deference to FCC guidance under *Chevron* inappropriate. *See Satterfield*, 569 F.3d at 951, 953 (stating that "'[the court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous'" and where "Congress spoke clearly, we need not look to the FCC's interpretations"). Following *Satterfield*, "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Id.*

Because the statutory definition of an ATDS is clear and unambiguous, the statute, under binding Ninth Circuit law, must be interpreted according to its plain meaning. *See Satterfield*, 569 F.3d at 951, 953. The Court should not—as Plaintiff would presumably have the Court do—rewrite the statute in an effort to further what Plaintiff believes to be the purpose behind the TCPA. *See Myers v. Toojay's Mgmt. Corp.*, 640 F.3d 1278, 1286 (11th

11

Cir. 2011) ("[W]e interpret and apply statutes, not congressional purposes.   If the requirement of having a random or sequential number generator is to be done away with, that decision is for Congress to make, not for the courts to make.   We are not allowed to add or subtract words from a statute; we cannot rewrite it.") (internal quotation marks and alteration omitted).

The statutory definition of an ATDS is clear: it requires that equipment have the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. *Satterfield*, 569 F.3d at 951.  Any suggestion that equipment need not have this capacity must be rejected.

**D.   EVEN IF FCC GUIDANCE IS APPLICABLE TO THIS COURT'S DETERMINATION, UNDISPUTED EVIDENCE DEMONSTRATES THAT THE 3SEVENTY PLATFORM IS NOT AN ATDS UNDER THE FCC'S INTERPRETATION OF THE STATUTORY DEFINITION**

GoDaddy contends that the Court need not consider the FCC's interpretation of the statutory ATDS definition in reaching its determination as to whether the 3Seventy Platform is an ATDS due to the Ninth Circuit's decision in *Satterfield*.   To the extent the Court disagrees, GoDaddy submits that neither the parties nor the Court need engage in a lengthy debate over whether the 3Seventy Platform has the "potential capacity" to generate random or sequential numbers, as that phrase has been interpreted in FCC guidance.   Such a determination is irrelevant to this matter given FCC guidance that defines the basic function of an ATDS as the capacity—regardless of whether present or potential—to dial numbers *without human intervention*.  *See* 2015 Guidance at ¶ 17; *accord Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015).  Since the undisputed evidence demonstrates that the 3Seventy Platform requires human intervention to send text messages, the FCC guidance on which Plaintiff will likely rely does not bar this Court from granting summary judgment in favor of GoDaddy.  *See* SSUF 8-13.  To the contrary, FCC guidance compels such a ruling.

///

The FCC has declined to establish a bright-line rule for determining how much human intervention is necessary to take equipment out of the definition of an ATDS, instead leaving the issue for the courts to decide on a "case-by-case" basis. *See* FCC's 2015 Guidance at ¶ 17. In the Ninth Circuit, recent cases decided outside of a predictive dialer context hold that "human intervention" is not limited to the mere "dialing" of a number, but must be analyzed vis-à-vis the platform as a whole. Indeed, the *Marks* decision highlighted above is notable not only for its treatment of the capacity issue, but also because the court alternatively found that the SMS platform at issue was not an ATDS because it was only capable of sending a text message through methods that "require[d] human curation and intervention." *Marks,* 55 F. Supp. 3d at 1292.

Again, as described by 3Seventy's corporate representative, the 3Seventy Platform operates in a manner similar to that at issue in the *Marks* case but with additional levels of human intervention. The 3Seventy Platform will not send a text message without required human intervention at each of the following stages: (a) selecting telephone numbers to receive a message, (b) drafting message content, (c) determining the timing of a message, and (d) scheduling the date and time to transmit a message and (d) entering a Captcha to approve and authorize sending the message. *See* SSUF 8-13.

In addition to *Marks,* a number of other recent decisions in the Ninth Circuit support the conclusion that where, as with the 3Seventy Platform, human intervention is required to (a) select telephone numbers to receive a message, (b) draft a message, (c) determine the timing of a message, and (d) click 'send' to transmit a message, and such conduct is sufficient to defeat a TCPA claim:

·   *Luna v. Shac, LLC*, No. 14-cv-00607-HRL, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) (holding that the system at issue was not an ATDS because "drafting the message, determining the timing of the message, and clicking 'send' on the website to transmit the message to Plaintiff" constituted "human intervention")

·   *47  v. Shopkick, Inc*., Case No. C-14-2464-MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) (finding that defendant did not violate the TCPA, where Shopkick users were required to take multiple affirmative steps for Shopkick to send invitational messages)

- *McKenna v. Whispertext, LLC*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (holding the system at issue was not an ATDS because selecting telephone numbers to which messages were to be sent constituted human intervention)

- *Derby v. AOL, Inc.*, Case No. 5:15-cv-00452-RMW, 2015 WL 5316403, at *3-4 (N.D. Cal. Sept. 11, 2015) (holding that a user changing his or her status or "send[ing] a text message back to defendant's [] system" triggering a text message constituted human intervention)

- *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (finding human intervention was involved in using the GroupMe application where "Welcome Texts" that were automatically triggered by a user action "were sent to plaintiff as a direct response to the intervention of [] the [] group creator" when he added plaintiff to the group)

- *Gragg v. Orange Cab Co.*, No. 12-0576, 2014 WL 494862, at *3 (W.D. Wash. Feb. 7, 2014) (granting defendant summary judgment and finding that a computerized taxi dispatch system did not qualify as an ATDS because the driver's input was necessary before the system could draft and send a message: "[t]he system is able to dial and transmit the dispatch notification only after the driver has physically pressed 'accept': human intervention is essential.")

The reasoning set forth above has also been adopted by courts in other circuits. *See, e.g.*, *Modica v. Green Tree Servicing, LLC*, No. 14 C 3308, 2015 WL 1943222, at *3 (N.D. Ill. Apr. 29, 2015) (granting defendant summary judgment and finding that its representative could not have used a computer program to call plaintiffs without human intervention where defendant's representative could only access the equipment by logging into the program; stating that although "the additional step of logging into the [equipment] is minimal," it was nonetheless sufficient human intervention).

Given the undisputed evidence regarding the operation of 3Seventy's Platform and the extent of human intervention involved, the Court should grant GoDaddy's motion for summary judgment.

**E.  IF THE COURT IS INCLINED TO DENY GODADDY'S MOTION FOR SUMMARY JUDGMENT IN RELIANCE ON THE FCC'S "POTENTIAL CAPACITY" GUIDANCE, GODADDY MOVES THIS COURT FOR THE ISSUANCE OF A STAY**

As detailed above, GoDaddy submits that the Court need not reach the issue of whether to apply the FCC's guidance on "capacity" in order to resolve the instant motion

14

given undisputed evidence that demonstrates the 3Seventy Platform (a) does not have present capacity to randomly or sequentially generate numbers, as required by the statutory language, and (b) even if it could be modified to have such capacity, the 3Seventy Platform requires human intervention to send the text messages at issue. However, to the extent the Court is inclined to deny summary judgment due to a question over whether the 3Seventy Platform has the "potential capacity" to store or produce numbers to be called using a random generator, as that term has been interpreted by the FCC, GoDaddy respectfully requests that the Court stay the litigation of this matter pending the Ninth Circuit's determination in *Marks v. Crunch San Diego*, No. 14-56834 (the "*Marks Appeal*"). The *Marks Appeal* was recently stayed by the Ninth Circuit *sua sponte* pending the issuance of a decision in *ACA International v. Federal Communications Commission, et al.*, No. 15-1211 (the "*ACA Int'l Appeal*").

As relevant to this matter, the *ACA Int'l Appeal* calls into question the FCC's 2015 Guidance, which determined that a piece of equipment has sufficient capacity to qualify as an ATDS if it has the "potential" capacity to store or produce numbers to be called using a random generator, but not if it only has the "theoretical" capacity. *See* 2015 Guidance at ¶ 11 and ¶ 16. The 2015 Guidance does not clarify the difference between "potential" and "theoretical" capacity. *Id.* The D.C. Circuit will determine whether the FCC's treatment of the term "capacity" in defining ATDS is "arbitrary, capricious, [or] an abuse of discretion," and thus results in an approach that does not comport with the caller's constitutional rights of due process and freedom of speech, and that disregards the applicable statute. Def.'s Req. for Judicial Notice Ex. B, Amended Petition of ACA at 3 (ECF No. 21-3). In light of the potential impact of the *ACA Int'l Appeal* on one of the grounds for appeal raised in the *Marks Appeal*, the Ninth Circuit issued a *sua sponte* stay of that matter pending the D.C. Circuit's forthcoming decision. *See* Def.'s Req. for Judicial Notice, Ex. C, Order Staying Appeal (ECF No. 68).

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket," i.e. to grant a "Landis stay." *Clinton v. Jones*, 520 U.S. 681, 706

1    (1997) (citing *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936)). The Court, therefore, may

2    "find it . . . efficient for its own docket and the fairest course for the parties to enter a stay of

3    an action before it, pending resolution of independent proceedings which bear upon the

4    case." *Leyva v. Certified Gorcers of Cal., Ltd*., 593 F.2d 857, 863 (9th Cir. 1979).   In

5    exercising its discretion in determining whether to grant a *Landis* stay, this Court must weigh

6    the competing interests of the various parties that may be affected by the decision to grant or

7    refuse to grant the stay, including (1) the possible damage or harm to the non-moving party

8    which may result from granting the stay; (2) the hardship or inequity the moving party may

9    suffer in being required to go forward with the case if the request for a stay is denied; and (3)

10   "the orderly course of justice measured in terms of the simplifying or complicating of issues,

11   proof, and questions of law which could be expected to result from a stay."   *Lockyer v.*

12   *Mirant Corp*., 398 F.2d 1098, 1110 (9th Cir. 2005).

13          To the extent this Court believes it is obliged to decide the issue of whether the

14   3Seventy Platform should be evaluated for its potential capacity pursuant to the FCC's

15   guidance, GoDaddy submits that the *ACA Int'l* and *Marks Appeals* bear directly on the issue

16   and compel the issuance of a stay.  Given that the *ACA Int'l* and *Marks Appeals* have been

17   briefed and argued, the appeals are not likely to remain pending for an extended period of

18   time and the possible prejudice to Plaintiff in granting the requested stay is minimal.  *See*

19   *Bay Area Surgical Group, Inc. v. Aetna Life Ins. Co*., No. 5:13-CV-05430-EJD, 2014 WL

20   2759571, at *5 (N.D. Cal. June 17, 2014); *see also Nussbaum v. Diversified Consultants,*

21   *Inc*., No. 15-CV-600, 2015 WL 5707147, at *2 (D. N.J. Sept. 28, 2015) ("Because delay

22   results inherently from the issuance of a stay, courts have found that mere delay does not,

23   without more, necessitate a finding of undue prejudice and clear tactical disadvantage.")

24          In contrast, hardship to GoDaddy and considerations of judicial economy weigh in

25   favor of a stay.  If the case is not stayed, GoDaddy may suffer hardship in preparing for class

26   certification and trial based solely on the Court's determination that issues of fact exist as to

27   the "potential" capacity of the 3Seventy Platform.  Lastly, granting a stay may simplify the

28   issues in this case and conserve judicial resources.  Any order by this Court which is issued

1   in reliance on the FCC's guidance requiring an evaluation of the 3Seventy Platform's
2   "potential" capacity will be called into question if the D.C. Circuit decides against the FCC
3   and the Ninth Circuit renders its decision in *Marks* accordingly.   Therefore, the Court and
4   both parties will benefit from a clarification of the applicable law.   *See Provo v. Rady*
5   *Children's Hosp. San Diego*, 2015 WL 6144029, *1 (S.D. Cal. July 29, 2015).

6   **V.**   **CONCLUSION**

7       In light of the foregoing, GoDaddy respectfully requests the Court grant its Motion for
8   Summary Judgment as to Plaintiff's sole claim for violation of the TCPA.   To the extent the
9   Court is inclined to deny GoDaddy's Motion for Summary Judgment in reliance on the
10  FCC's potential capacity guidance, GoDaddy respectfully requests the Court grant its
11  alternative Motion to Stay pending the Ninth Circuit's decision in *Marks v. Crunch San*
12  *Diego*, No. 14-56834.

13

14
15  Dated:  March 31, 2017            **COZEN O'CONNOR**
                                      Aaron M. McKown
16                                    Paula L. Zecchini

17
                                      By:  */s Paula L. Zecchini*
18                                         Paula L. Zecchini
                                      Attorneys for Defendant
19                                    GODADDY.COM, LLC

20

21

22

23

24

25

26

27

28

17

1

## **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies, under penalty of perjury under the laws of the State

3

of Arizona that I electronically filed the foregoing document with the Clerk of the Court

4

using the CM/ECF system which will send notification of such filing to the following:

5

6   Phillip A. Bock
    Tod A. Lewis
7   James M. Smith
    **BOCK, HATCH, LEWIS &**
8   **OPPENHEIM, LLC**
    134 N LaSalle Street, Suite 1000
9   Chicago, IL  60602
    phil@classlawyers.com
10  tod@classlawyers.com
    jim@classlawyers.com
11
12  ***Counsels for Plaintiff John Herrick***

Trinette G. Kent
**KENT LAW OFFICES**
10645 N Tatum Boulevard, Suite
200-192
Phoenix, AZ 85028
tkent@kentlawpc.com

13

14

SIGNED AND DATED this 31st day of March, 2017 at Seattle, Washington.

15

COZEN O'CONNOR

16

17

By:   ___/s/ Paula L. Zecchini_____
      Paula L. Zecchini

18

19

20

21

22

23

24

25

26

27

28